No. 47,669

CHARLES WERTZ, *Appellant,* v. SOUTHERN CLOUD UNIFIED SCHOOL DISTRICT # 334, *Appellee.*

(542 P. 2d 339)

Opinion filed November 8, 1975.

*Richard H. Seaton,* of Everett & Seaton, of Manhattan, argued the cause and was on the brief for the appellant.

*Don W. Noah,* of Beloit, argued the cause, and *Jerry L. Harrison,* of Beloit, was with him on the brief for the appellee.

*Ward D. Martin,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, was on the brief of Amicus Curiae for Kansas—National Education Association.

The opinion of the court was delivered by

FROMME, J.: This is an action for damages by a non-tenured public schoolteacher who was discharged during his contract term. The district court denied relief and the schoolteacher took this appeal.

The appellant, Charles Wertz, was a teacher of 14 years experience. He was employed by the defendant school district as a teacher of instrumental and vocal music for the 1972-73 school year. He began work August 1, 1972. His teaching assignment included beginning, intermediate and high school bands together with high school mixed chorus.

In September and October of 1972, the plaintiff's teaching performance was satisfactory to Principal Housh and to Superintendent Nichols in all respects except for his classroom control and his discipline of students. The principal and superintendent discussed this lack of discipline with Mr. Wertz. On November 6, 1972, the plaintiff received a written evaluation of his teaching performance from Principal Housh. It rated Mr. Wertz as progressive, hard-working, well-groomed and versatile but advised that his rapport with students in class was questionable and that measures should be taken to establish better rapport. The evaluation pointed out

that Mr. Wertz' classroom control was an area needing improvement.

Mr. Wertz instituted a practice of student suspensions for disciplinary infractions which was not popular. Later in November the superintendent informed Wertz by letter that the administration officials believed there had been no improvement in his discipline and control of students. Wertz was requested to accomplish improvement in this area by December 11, 1972. Thereafter Wertz increased the number of expulsions from classes for disciplinary infractions but after a conference with the principal it was decided to return to the previous suspension practices.

On December 12, Principal Housh submitted an evaluation report to Mr. Wertz which indicated that discipline in his classes was getting worse and "causing problems in the structure of the school."

On December 13, Mr. Wertz was notified in a letter from Superintendent Nichols that he was suspended from further teaching duties without further pay. The four reasons given for such action were related to the discipline problems in Mr. Wertz' classrooms. Wertz was advised that Superintendent Nichols would recommend that Wertz be discharged at the next school board meeting. The letter further advised that Mr. Wertz was given 30 days in which to request a hearing before the board on his suspension.

The following day, December 14, 1972, the board met and presumably on the recommendations of Superintendent Nichols and Principal Housh Mr. Wertz was notified that the board had voted unanimously to discharge him without pay. The letter of discharge listed the same reasons and stated he had 30 days in which to request a hearing before the board. Mr. Wertz was given no prior notice of the time and place of the school board meeting which authorized the superintendent to issue the official letter of discharge. He was not present at the meeting and had no chance to counter the statements of Superintendent Nichols and Principal Housh upon which the board's decision rested.

After the termination letter was received plaintiff's legal counsel made formal demand on the board that Mr. Wertz be reinstated with back pay and current pay until a hearing could be held on his discharge before an impartial tribunal. Demand for an impartial tribunal was refused and this action was then filed in the district court requesting reinstatement with pay and damages for wrongful discharge in violation of his constitutional right to due process

under the 14th Amendment to the Constitution of the United States.

The district court held a hearing on plaintiff's request for a temporary order to require the school board to reinstate him with pay until such time as he was afforded a fair hearing on the charges against him. The court refused to grant a temporary order. Ten months after the action was filed the court on motion dismissed plaintiff's claim for damage to his reputation. No appeal has been taken from those portions of the court's judgment. At the time of the trial on December 13, 1973, the term of plaintiff's contract had expired and plaintiff had secured another teaching position. The parties then stipulated that plaintiff's loss of salary for which damages were sought amounted to $4,400.00.

The case was tried to the court and the court found that the plaintiff was unable to maintain discipline in his classrooms and was discharged by the board on justifiable grounds. The court's findings of fact and conclusions of law do not speak to the question of the violation of due process rights under the 14th Amendment which was raised by the appellant in the trial court and is now presented on appeal.

At the time of appellant's discharge in 1972, Kansas had provided no statutory procedure for a hearing on discharge of a public schoolteacher, with one exception. The exception is set forth in a statute (K. S. A. 72-5407) relating to tenure of teachers employed by metropolitan districts located in cities having a population of over 120,000. Such statute does not apply to the defendant district or to appellant.

Our present act providing procedural guidelines for a due process hearing on termination of a teacher's contract was first passed in 1974. (See K. S. A. 1974 Supp. 72-5436, *et seq.*) Appellant's discharge did not occur at a time so as to fall within the statutory procedure outlined by the 1974 act. So there will be no guidelines in this case which are taken from this recent statutory declaration on due process hearings.

It should be noted, however, that under K. S. A. 72-5411 (the continuing contract law) "All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, . . ." In the absence of written notice by the school board to terminate a teacher's contract on or before March 15,

the contract continues for the next succeeding school year. This applied to Mr. Wertz' contract.

The due process clause of the 14th Amendment to the U. S. Constitution provides:

". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ."

The U. S. Supreme Court has interpreted this provision of the constitution to protect citizens against the action of any state and its agencies, including school boards, as distinguished from actions of a private individual in terminating a contract.

In *Board of Regents v. Roth*, 408 U. S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701, the high court considered the rights of a teacher employed by a state university. In *Roth* it is said:

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." (p. 576.)

In the opinion it is pointed out that in the area of public employment, public college professors, tenured and non-tenured, who are dismissed from official teaching positions during the terms of their contracts have interests in continued employment which are safeguarded by the due process clause of the 14th Amendment.

One of the interests protected is termed "property". It is a purpose of the constitutional right to a due process hearing to provide an opportunity for a person to secure certain benefits and support claims of entitlement to protected rights, such as an interest in property which is being threatened by the state and its agencies. For due process under the 14th Amendment to the U. S. Constitution to apply, there must be state action and deprivation of an individual interest of sufficient substance to warrant constitutional protection. (*Benschoter v. First National Bank of Lawrence*, 218 Kan. 144, 542 P. 2d 1042.)

The stigma which attaches to a mid-year dismissal of a non-tenured teacher for incompetence is sufficiently injurious to call for a hearing and, even though a hearing is not accorded such teacher by state statute, constitutional requirements of due process operate to overcome the lack of statutory rule. (*Nichols v. Eckert*, [Alaska, 1973] 504 P. 2d 1359.)

A teacher who is dismissed without pay during the term of his contract has an interest in continued employment which is safe-

guarded by due process. (*Wieman v. Updegraff*, 344 U. S. 183, 97 L. Ed. 216, 73 S. Ct. 215.)

In *Rydd v. State Board of Health*, 202 Kan. 721, 451 P. 2d 239, this court had occasion to examine the elements of due process and held:

"The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." (Syl. ¶ 3.)

Various federal cases subsequent to *Roth* hold that teachers are deprived of a property interest if a governmental body, such as a school board, extinguishes their legitimate claims to their jobs during the terms of their public employment contracts. The U. S. District Court in Kansas held that a teacher in the Wichita public schools had a property interest in his expectancy of continued employment sufficient to require notice and hearing prior to non-renewal of his contract under the continuing contract law of Kansas, K. S. A. 72-5410, *et seq.* (*Endicott v. Van Petten*, 330 F. Supp. 878 [D. Kan. 1971].)

The property interest in a teacher's contract obligates the government agency (school board) to grant the teacher notice of a proposed dismissal and a hearing at which he can be fully informed of the reasons for dismissal and challenge their sufficiency. (See *Roane v. Callisburg Independent School District*, 511 F. 2d 633, 639 [5th Cir. 1975]; *Jackson v. Griffith*, 480 F. 2d 261, 269 [10th Cir. 1973]; *Hostrop v. Board of Junior College Dist. No. 515, Etc., Ill.*, 471 F. 2d 488, 494, 495 [7th Cir. 1972]; *Cooley v. Board of Education of Forrest City Sch. Dist.*, 453 F. 2d 282, 286, 287 [8th Cir. 1972].)

The constitutional right to due process may be waived by a person the same as other constitutional rights. The school board insists that a proper hearing was tendered, giving Mr. Wertz 30 days in which he failed to request the hearing and thereby waived his rights. The case of *Million v. Board of Education*, 181 Kan. 230, 310 P. 2d 917, is cited in support of waiver in this case. In *Million* the plaintiff was notified and took part in a hearing held by the board of education and it was held that any technical defects in the notice and hearing were waived by taking part in such hearing. There are certain distinguishing features in our present case.

Here the termination was without pay and made effective immediately on the pre-hearing decision of the board in the absence of the plaintiff. The plaintiff in our present case refused to take part

in any subsequent hearing by the board unless the hearing could be had before an impartial forum. No such hearing would be agreed to by the board.

A determination that a party was entitled to due process in his dismissal is only preliminary to determining the extent of the protection to be accorded or in determining whether a waiver of due process has occurred. Constitutional due process has been referred to as a malleable concept. This was expressed by Mr. Justice Frankfurter in his concurring opinion in *Anti-Fascist Committee v. McGrath*, 341 U. S. 123, 95 L. Ed. 817, 71 S. Ct. 624, as follows:

". . . [W]hat is unfair in one situation may be fair in another. . . . The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, . . . the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment. [Citations omitted.]" (p. 163.)

In weighing these factors in the case at bar, we must consider the interests of both Mr. Wertz and the school district. The interest of Mr. Wertz in not being dismissed without a hearing is manifest. Without an opportunity to be heard and present his case, he could be dismissed without good cause. A serious charge of incompetency because of lack of discipline in the classroom had been levied against him, a charge which would permanently remain on his record and become a hindrance to re-employment. In any case an accused teacher about to be discharged mid-term is in need of a fair and impartial forum in which the issue may be settled.

The interests of the school district are to protect the students from incompetent teachers and to maintain a proper atmosphere in the classroom for learning. They have an interest in hiring another teacher to replace an incompetent one without incurring the added expense of paying two teachers to fill one position. Under extreme circumstances involving a serious disruption of the school educational processes it may be imperative that a teacher be relieved of teaching duties immediately but in fairness to a teacher a hearing should ordinarily be afforded before a decision to terminate without pay is made.

In the present case the school had been having discipline problems which carried over from the prior year. The former principal and several teachers had been terminated at the end of that school year. This same courtesy could have been extended to Mr. Wertz. The discipline problems were directly related to certain students

who continued in school during the term for which Mr. Wertz was hired. It does not appear that these problems were of such a nature as to be considered a sudden serious disruption of the educational processes of the school. They were not due solely to lack of discipline in Mr. Wertz' classrooms. The situation did not justify immediate dismissal before a hearing and without pay. When principles of due process attach, there is a certain level of procedural fairness that must be afforded an affected party.

The question squarely presented to us is whether the tender of a hearing "after discharge" in this case fulfilled the requirements of constitutional due process. It has been previously determined in several federal cases that such a hearing held or tendered will not fulfill the requirements under the specific facts of those cases.

In *Wagner v. Little Rock School District*, 373 F. Supp. 876 (E. D. Ark. 1973), a situation almost identical to the facts of our present case was presented. There the school board offered to meet with Mrs. Wagner following her discharge and to grant a hearing after the decision was made by the board to fire her. The court stated:

". . . [T]he Constitution requires that governmental decisions, subject to the requirement of procedural due process, be rendered only *after* those procedural requirements have been satisfied. The very purpose of procedural protection is the tempering of the decision process to help insure fairness, and fairness demands that competing interests be represented before the decision-maker on as equal a footing as circumstance permits. The individual who is the object of the proposed governmental action should not have to bear the handicap of overcoming the inertia of the status quo; he should not bear the burden of persuading the decision-maker to reverse a fait accompli unless the proponent of the action can show specific, valid, and appropriate reasons for precipitous, pre-hearing action. No such reasons or circumstances existed here. Hence, the decision regarding Mrs. Wagner's termination became constitutionally infirm upon its implementation; subsequent acts, short of reinstatement, by defendant could not have cured the infirmity." (p. 882.)

The observations of the *Wagner* court apply with equal force in the present case. Courts have recognized that some situations may arise in which the action of discharge prior to a hearing are justifiable, such as when misconduct is so gross that substantial disruption is highly probable unless instant expulsion is effected. (See *Hostrop v. Board of Junior College Dist. No. 515, Etc., Ill.*, supra, p. 495, and *Fielder v. Board of Ed. of Sch. Dist. of Winnebago, Neb.*, 346 F. Supp. 722, 729, 730 [D. Neb. 1972].) This case does not present such extreme circumstances.

The school board has argued that the trial in the district court

amounted to a due process hearing in which the court found justifiable cause for termination. The thrust of the argument being that such a determination removes any liability of the board for wages after the wrongful termination of the contract. We cannot agree. Constitutional due process in this case required a hearing by the school board before the discharge. The trial in district court was brought by the teacher to enforce his property right which we have determined was violated and which gave rise to the action in the district court. The district court's decision denying relief was based upon the faulty premise that the issue presented was limited to whether the discharge was justifiable. Instead, the issue presented to the court was whether the board had violated a protected right to constitutional due process.

Accordingly we hold the actions of a teacher in refusing to participate in an "after the fact" discharge hearing tendered by the board of education did not constitute a waiver of constitutional due process rights.

In the absence of extreme circumstances which might justify immediate termination a teacher is entitled to a hearing prior to his discharge, and the grant of a subsequent hearing under the facts of this case could not cure a failure to provide such a hearing. (See *Stout v. Whiteaker*, 379 F. Supp. 218 [M. D. Tenn. 1974].)

In this case the term of the teacher's contract has expired. Mr. Wertz has obtained employment elsewhere. The parties stipulated in the district court that plaintiff's loss of salary for which damages were sought amounted to $4,400.00. Even though our state law provided no tenure rights for a teacher under the facts of this case, the teacher did have a property interest in his current contract. A teacher whose employment is rightfully or wrongfully terminated in mid-year, but without a fair hearing, is entitled to back pay from the date of his discharge until a due process hearing is afforded or until the contract for that current year has expired.

The judgment of the district court is reversed and judgment is entered by this court in favor of Charles Wertz in the stipulated amount of $4,400.00 together with interest and costs.

MILLER, J., not participating.