(674 P.2d 1066)
No. 55,339

STANLEY L. KARSTETTER and JOHN R. HOUSEL, *Appellants*, v. DANIEL L. LOVE, County Attorney for Ford County, and RICHARD A. WOLF, Sheriff for Ford County, Kansas, *Appellees.*

Opinion filed January 19, 1984.

*Glenn E. Casebeer II,* of Schneider & Casebeer, of Coffeyville, for the appellants.

*Lawrence V. Christ,* special assistant attorney general, *Daniel L. Love,* county attorney, and *Robert T. Stephan,* attorney general, for the appellees.

Before SPENCER, P.J., JEROME HARMAN, C.J. Retired, assigned, and STEVEN P. FLOOD, District Judge, assigned.

SPENCER, J.: This appeal is from denial of writs of habeas corpus sought by appellants Karstetter and Housel on separate petitions, consolidated for hearing below and before this court.

Appellants have been charged with violations of the Kansas Securities Act, K.S.A. 17-1252 *et seq.* and are defendants in criminal proceedings now pending in Ford County. Further proceedings in that case have been stayed pending this appeal.

Although couched in somewhat different language, the principal and dispositive issue presented on this appeal is whether

appellants' detention at and for the purposes of the preliminary hearing, under summonses issued without a prior showing of probable cause, was unlawful and, if so, whether the trial court erred in denying their petitions for writs of habeas corpus.

The pending proceedings against appellants were commenced with the filing of a twelve-count complaint and the issuance of summons for each of them on August 4, 1982. The preliminary hearing was scheduled for September 29, 1982. At that time appellants appeared in person and by their retained counsel, who then moved to dismiss the case prior to the hearing, contending that under the standards set forth in *Wilbanks v. State,* 224 Kan. 66, 579 P.2d 132 (1978), neither Karstetter nor Housel was required to appear for the preliminary hearing because the summonses directing their appearances had been issued without a prior showing of probable cause, all as required by K.S.A. 22-2302. The State conceded this had been done and further admitted the charges as set forth in the complaint had been phrased in the terms of the general statutory language. However, the State resisted the motion to dismiss, contending appellants were not then in fact detained as there had been no arrest warrant issued, and a showing of probable cause as a prerequisite to issuance of the summonses under the statute was not required. Inquiry was then made by defense counsel as to whether appellants were free to go, to which the court replied, "They are being detained for preliminary hearing," and "I would view them under arrest . . . ." The motion to dismiss was denied. The State then presented its evidence and rested, whereupon the hearing was continued to November 8, 1982, when Karstetter and Housel presented evidence and rested. The court then found the evidence presented to be sufficient and both Karstetter and Housel were bound over for trial. On that same date, appellants filed their separate petitions for writs of habeas corpus.

We find the State's argument that appellants were not unlawfully detained within the purview of K.S.A. 60-1501 untenable. Although the provisions of 22-2302 permit the issuance of summons in lieu of an arrest warrant when so requested by the prosecuting attorney, the statute also provides: "If a defendant fails to appear in response to the summons, a warrant *shall* issue." Emphasis supplied. The clear language of the statute

requires that the magistrate find probable cause prior to the issuance of either a warrant or a summons, both of which may be issued on the same complaint. If these appellants had ignored the summonses which directed their appearances, it is most probable they would soon thereafter have been arrested. Furthermore, when they did appear, the court expressly stated they could not leave and that they should consider themselves under arrest. Obviously, at that point, they were being detained without a prior showing of probable cause and habeas corpus would then have been proper to terminate further illegal detention. See *Henderson v. Schenk*, 6 Kan. App. 2d 562, 631 P.2d 246 (1981).

However, appellants' petitions for writs of habeas corpus were not filed until the last day of the preliminary hearing and were not considered until after probable cause had been shown and they had been bound over for trial. Appellants did not at any time request the preliminary hearing be stayed until their status in court could be determined. Consequently, when finally their applications were heard, their detention was no longer illegal. *State v. Hammond*, 4 Kan. App. 2d 643, 609 P.2d 1171, *rev. denied* 228 Kan. 807 (1980). See also *State v. Stephenson*, 217 Kan. 169, Syl. ¶ 1, 535 P.2d 940 (1975); *State v. Einhorn*, 213 Kan. 271, 275, 515 P.2d 1036 (1973); *State v. James Earley*, 192 Kan. 167, 169-71, 386 P.2d 189 (1963); *State v. Boster*, 4 Kan. App. 2d 355, 356-57, 606 P.2d 1035 (1980). The court did not err in refusing to grant the writs of habeas corpus for lack of showing of probable cause prior to the issuance of summonses.

In January, 1981, the State caused a subpoena duces tecum to be issued to Karstetter ordering him to produce all books and records in his possession in anywise relating to Century Oil Producers, Inc. On February 12, Karstetter's attorney transmitted the documents with a letter indicating they were the working papers of the corporation, and sought to invoke Karstetter's right against self-incrimination. On February 23, the State requested additional documents and information, which were produced. The subpoenaed documents were later used at the preliminary hearing; however, a record of that hearing has not been provided.

Karstetter argues he properly invoked his right against self-incrimination and his right to immunity pursuant to K.S.A. 17-1265(*d*). He contends the use of the documents during the

preliminary hearing violated his constitutional rights and he should therefore be discharged.

K.S.A. 17-1265(*d*) provides:

"No person is excused from attending and testifying or from producing any document or record before the commissioner, or in obedience to the subpoena of the commissioner or any officer designated by him, or in any proceeding instituted by the commissioner, on the ground that the testimony or evidence (documentary or otherwise) required of him may tend to incriminate him or subject him to a penalty or forfeiture; *but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after claiming his privilege against self-incrimination, to testify or produce evidence* (documentary or otherwise), except that the individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying." Emphasis supplied.

The State contends habeas corpus is not an appropriate vehicle for challenging a trial court's pretrial denial of a claim of immunity pursuant to the statute. In *In re Berkowitz,* 3 Kan. App. 2d 726, 602 P.2d 99 (1979), this court held habeas corpus to be an appropriate procedure to present a claim of double jeopardy. Although we are not here concerned with double jeopardy, it is of concern that Karstetter may have been immune from prosecution on account of evidence submitted pursuant to the statute and his detention in Ford County for the purpose of that prosecution wrongful. We believe the reasoning of *Berkowitz* to be applicable here. Habeas corpus is the only process which affords a speedy determination of that issue. We therefore conclude a claim of immunity under K.S.A. 17-1265(*d*) may properly be raised prior to trial in a habeas corpus proceeding. To require an accused who is immune from prosecution to await final determination of the case would extend the wrongful restraint of his liberty in obvious disregard of his constitutional rights.

The trial court denied Karstetter's claim of immunity because the records requested and produced were corporate records not subject to the traditional guarantees of the Fifth Amendment, he failed to personally assert his Fifth Amendment right against self-incrimination, and he was on notice that individual immunity would not be extended to him.

It is well established that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of personal documents as well as compelled oral testimony. On the other hand, the privilege does

not extend to records or documents of a collective entity, such as a corporation, association or partnership. An individual cannot rely upon the privilege against self-incrimination to avoid the production of records of an entity which are in his possession in a representative capacity even though those records might incriminate him personally. These principles reflect the historical view that the privilege is limited to a natural individual and his own testimony and personal records. See *Bellis v. United States,* 417 U.S. 85, 87-90, 40 L.Ed.2d 678, 94 S.Ct. 2179 (1974); *United States v. White,* 322 U.S. 694, 88 L.Ed. 1542, 64 S.Ct. 1248 (1944); *State, ex rel., v. Koscot Interplanetary, Inc.,* 212 Kan. 668, 676-78, 512 P.2d 416 (1973).

It then follows that the grant of immunity under K.S.A. 17-1265(*d*) extends only to natural individuals who are compelled under that statute to produce personal documents or testimony. Immunity is not available when the evidence consists of the records and documents of a corporation.

The trial court made a factual finding that the records and documents submitted by Karstetter were corporate records. That finding is supported by substantial competent evidence. Accordingly, Karstetter was not entitled to immunity under K.S.A. 17-1265(*d*) and his petition for a writ of habeas corpus on this ground was properly denied.

Affirmed.