(20 P.3d 1281)

No. 85,904

JUSTIN LEE NEWBERRY, *Appellant,* v. RICHARD DEAN BEFORT, District Magistrate Judge, Position 2, of the 30th Judicial District of Kansas, *Appellee.*

Opinion filed April 6, 2001.

*Stephen M. Joseph,* of Joseph & Hollander, of Wichita, for appellant.

*M.J. Willoughby, Scott B. Poor,* assistant attorneys general, and *Carla J. Stovall,* attorney general, for appellee.

Before GREEN, P.J., BEIER, J., and DAVID PRAGER, Chief Justice Retired, assigned.

GREEN, J.: Justin Lee Newberry appeals the denial of his petition for writs of habeas corpus and quo warranto. On appeal, Newberry argues that the trial court erred in denying his petition because the lay district magistrate judge who issued his arrest warrant is not a qualified judge. We disagree and affirm.

On May 26, 2000, the Harper County Attorney filed a criminal complaint charging Newberry with involuntary manslaughter while driving under the influence of alcohol or other drugs, driving under the influence of alcohol, and other offenses. The county attorney presented the criminal complaint to District Magistrate Judge Richard Dean Befort who issued the arrest warrant. Judge Befort is

certified by the Kansas Supreme Court as qualified to hold the office of district magistrate judge in accordance with K.S.A. 20-337. Judge Befort is not a licensed attorney.

Newberry filed a written objection to Judge Befort conducting any proceedings in his criminal case, alleging that Befort was not qualified to be a judge of the district court under Article 3, § 7 of the Kansas Constitution because Befort is not a lawyer.

In addition to his objection in his criminal case, Newberry filed a petition for writs of habeas corpus and quo warranto, and for declaratory judgment. District Court Judge Larry T. Solomon granted summary judgment to Judge Befort in the civil case and overruled Newberry's objection in his criminal case, finding that the statutory provisions granting district magistrate judges authority to handle initial proceedings in criminal cases are not prohibited by the Kansas Constitution. Specifically, Judge Solomon found that the legislature had the constitutional authority to create the office of district magistrate judge and to assign qualifications for that office. Judge Solomon ordered Newberry to appear before Judge Befort for his first appearance and authorized Judge Befort to proceed with the preliminary hearing in the criminal case.

Newberry appeals the trial court's denial of his petition for writs of habeas corpus and quo warranto. His criminal case is pending before the district court.

It is first necessary to determine whether this court has jurisdiction. Judge Befort argues that jurisdiction is lacking because the appeal is interlocutory, the case is moot, and Newberry lacks standing. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000).

Judge Befort argues that Newberry's appeal is premature as an improper interlocutory appeal from his pending criminal case. This argument fails to recognize the distinction between an attempt to appeal in a criminal action and the independent civil actions at issue here, although we are sympathetic that these actions do have the practical effect of an end run.

K.S.A. 60-2102(a)(2) vests jurisdiction in the Court of Appeals to hear appeals from "an order that grants or refuses relief in the

form of mandamus, quo warranto or habeas corpus." Under the statute, this court has jurisdiction to hear Newberry's appeal from the district court's summary judgment in favor of Judge Befort in the habeas corpus and quo warranto action.

Judge Befort further contends that Newberry's challenge to the arrest warrant and initial appearance is moot. Judge Befort suggests that Newberry's objection to his arrest warrant and initial appearance will become moot after the preliminary hearing. To support his argument, Judge Befort cites *Karstetter v. Love*, 9 Kan. App. 2d 194, 674 P.2d 1066 (1984). *Karstetter* held that when a petition for writ of habeas corpus is considered after probable cause has been shown at the preliminary hearing, the detention is no longer illegal. 9 Kan. App. 2d at 196.

*Karstetter*, however, is distinguishable from the instant case because the habeas corpus petition in that case alleged a lack of showing of probable cause. Here, Newberry's habeas corpus petition alleges improper confinement due to Judge Befort's lack of authority to issue his arrest warrant. The instant case is further distinguishable from *Karstetter* because Newberry also petitioned for a writ of quo warranto, alleging that Judge Befort lacked authority to issue his arrest warrant because Befort is not an attorney. As a result, a preliminary hearing will not cause to be moot the irregularities complained of by Newberry.

Judge Befort suggests in passing that Newberry lacks standing to challenge his authority to issue an arrest warrant. However, we refuse to address this issue because it has not been adequately briefed by appellee. See *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999) (holding that an issue which is not briefed is deemed abandoned).

As a result, this court has jurisdiction to consider the merits of Newberry's appeal.

Newberry challenges Judge Befort's authority to issue his arrest warrant on the ground that K.S.A. 20-334(b), the statute listing the qualifications of district magistrate judges, conflicts with Article 3, § 7 of the Kansas Constitution. This court's standard of review is as follows:

" ' "The constitutionality of a statute is presumed, all doubts must be resolved in favor if its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

" ' "In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

" ' "Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]" ' " *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

In addition, "where the constitutionality of a state statute is involved, the question presented is not whether the act is expressly or impliedly authorized by the constitution, but whether it is expressly or impliedly prohibited by the constitution. [Citation omitted.]" *Leek v. Theis*, 217 Kan. 784, 803, 539 P.2d 304 (1975)."

Article 3, § 1 of the Kansas Constitution provides that "[t]he judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law." The constitution further states the qualifications of justices and judges:

"Justices of the supreme court and judges of the district courts shall be at least thirty years of age and shall be duly authorized by the supreme court of Kansas to practice law in the courts of this state and shall possess such other qualifications as may be prescribed by law." Kan. Const. art. 3, § 7.

The Kansas Legislature created "two classes of judges of the district courts . . . : District judges and district magistrate judges." K.S.A. 20-301a. By statute, a district judge must be "regularly admitted to practice law in the state of Kansas." K.S.A. 20-334(a)(1). However, a district magistrate judge does not have to be an attorney. Instead, the qualifications for a district magistrate judge include:

"(1) [Graduation from] a high school or secondary school or the equivalent thereof;

"(2) [residence in] the county for which elected or appointed to serve; and

"(3) if not regularly admitted to practice law in Kansas, [certification] by the supreme court, in the manner prescribed by K.S.A. 20-337 and amendments thereto, as qualified to serve as a district magistrate judge." K.S.A. 20-334(b).

K.S.A. 20-337 provides for the certification of a district magistrate judge who is not regularly admitted to practice law in Kansas. Under the statute, a lay district magistrate judge must pass an examination given by the Supreme Court to ensure that he or she "possesses the minimum skills and knowledge necessary to carry out the duties of such office."

The issue raised by Newberry on appeal is whether K.S.A. 20-334(b) conflicts with Article 3, § 7 of the Kansas Constitution because the statute allows for lay district magistrate judges despite the constitutional provision that district court judges be attorneys. Although this is an issue of first impression, similar issues have been addressed by our Supreme Court and by courts in other jurisdictions.

*Sinclair v. Schroeder*, 225 Kan. 3, 586 P.2d 683 (1978), determined whether a district magistrate judge holding office by virtue of the temporary certificate provided for in K.S.A. 20-337 has a vested right in such office. *Sinclair* held that in the event that such an incumbent fails to successfully complete the examination within the required period, forfeiture is automatic and the office becomes vacant. In so holding, the *Sinclair* court noted that "[f]or a proper resolution of this case it is unnecessary to determine whether the district magistrate judges are 'judges of the district courts' within the meaning of Article 3, § 7, and who must therefore be admitted to practice law in this state." Instead, the court noted "[i]t is clear that the constitution reserves to the legislature the power to prescribe qualifications for all judges of the unified judicial system and it is no usurpation of judicial power for the legislature to exercise that legislative prerogative to prescribe such qualifications." 225 Kan. at 11.

The United States Supreme Court has addressed analogous issues. For example, *Mathews v. Weber*, 423 U.S. 261, 46 L. Ed. 2d 483, 96 S. Ct. 549 (1976), considered whether preliminary review, argument, and preparation of recommended decisions in Social Security benefits cases were among the "additional duties" that a magistrate could perform under the Federal Magistrates Act. The Federal Magistrates Act permits the federal district courts to assign magistrates certain described powers and duties, as well as "such

additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3) (1994). The *Mathews* Court determined that limited advisory review, subject to the district judge's ongoing supervision and final decision, fell among the range of duties that Congress intended magistrates to perform. 423 U.S. at 271-72.

However, in *Gomez v. United States*, 490 U.S. 858, 104 L. Ed. 2d 923, 109 S. Ct. 2237 (1989), the Court held that presiding at the selection of a jury in a felony trial is not one of the "additional duties" that a magistrate may be assigned under the Federal Magistrates Act. The Court rationalized that it was unlikely that Congress intended to allow a magistrate to conduct jury selection as an "additional duty" not subject to the procedural guidance or judicial review applicable to pretrial matters. 490 U.S. at 875-76. See *U.S. v. Paden*, 558 F. Supp. 636 (D. D.C. 1983) (holding that a magistrate who had been delegated authority to initiate and conduct probation violation hearings did not have statutory or implied authority to issue a bench warrant for probationer's arrest).

The Supreme Court considered another similar issue in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982). The *Marathon* Court held that the Bankruptcy Act of 1978 was unconstitutional because it conferred Article III power to non-Article III bankruptcy courts. 458 U.S. at 87. The constitutionality of the Bankruptcy Act was restored by an interim rule and later a Congressional act which eliminated the attributes of Article III judicial power of bankruptcy judges. 28 U.S.C. § 157 (1994); see 1 Steinberg, Bankruptcy Litigation §§ 1.4-1.6 (1989).

The instant case is distinguishable from the facts addressed in *Marathon*. Article III power is comparable to the general jurisdiction exercised by our district courts. However, unlike the Bankruptcy Act's furnishing of Article III power to the bankruptcy courts, our statutes do not confer general jurisdiction to district magistrate judges.

We read Article 3, § 1 as creating district courts of general jurisdiction. Further, we interpret Article 3, § 7 as requiring those district court judges who exercise general jurisdiction to be au-

thorized to practice law. However, district magistrate judges do not have general jurisdiction. Instead, district magistrate judges have only a limited role in the operation of our judicial system. The jurisdiction of district magistrate judges is restricted and their decisions are subject to de novo review by the district courts. K.S.A. 2000 Supp. 20-302b. Because district magistrate judges merely assist and lighten the workload of district judges, the position of district magistrate judge does not rise to that of a district judge.

The legislature was authorized to create a separate class of judges of the district court because the Kansas Constitution does not expressly or impliedly prohibit such legislative action. While Article 3 is not completely silent as to the types of judges within our court system, it does not proscribe the creation of a separate, subordinate class of judges within the district courts. Moreover, "[w]hen an office is created by an act of the legislature, that body has authority to name the terms of eligibility, and modify them at will." *Jansky v. Baldwin,* 120 Kan. 332, 333, 243 Pac. 302 (1926). As a result, the legislature had the authority to create the position of district magistrate judge and to assign the qualifications for those judges, including the criterion that district magistrate judges do not necessarily have to be licensed to practice law.

It is important to note that although K.S.A. 20-301a refers to district magistrate judges as "judge[s] of the district court[s]," this terminology does not mean that district magistrate judges are, in fact, district court judges within the meaning of Article 3, § 7 of the Kansas Constitution. Illustrative of this is a story told of Abraham Lincoln during his trial lawyer days. Lincoln is said to have cross-examined a witness as follows:

" 'How many legs does a horse have?'
" 'Four,' said the witness.
" 'Right,' said Abe.
" 'Now, if you call the tail a leg, how many legs does a horse have?'
" 'Five,' answered the witness.
" 'Nope,' said Abe, 'callin' a tail a leg don't make it a leg.' "

*Lamon v. McDonnell Douglas Corp.,* 19 Wash. App. 515, 534-35, 576 P.2d 426 (1978) (Andersen, J., dissenting) (citing 55 A.B.A.J. 818 [1969]).

Lincoln's reasoning is applicable in the instant case. Merely calling a district magistrate judge a judge of the district court, without conferring general jurisdiction upon that subordinate class of judge, does not make the district magistrate judge a judge of the district court as contemplated by Article 3, § 7.

We find that district magistrate judges are not required under Article 3, § 7 to be licensed to practice law and, as a result, K.S.A. 20-334(b) is not unconstitutional. The trial court did not err in denying Newberry's petition for writs of habeas corpus and quo warranto because Judge Befort was authorized to issue a warrant for Newberry's arrest.

Affirmed.